*Twenty-first Judicial District.*

# In the Court of Common Pleas of Schuylkill County.

## (*In Equity.*)

## THE PHILADELPHIA AND READING RAILROAD COM-PANY *v.* LAWRENCE, MERKLE & CO. *et al.*

The right of eminent domain in the State cannot be restricted except as provided by the constitution, delegated by the inherent power of the people. It is an infringement of that instrument to allow private property to be taken for private use. This can only be done for public purposes, and by paying or securing the payment thereof. The 4th section of article IX. is a disabling, not an enabling clause.

When a railroad takes private property for public use under the act of February, 1849, and its supplement they are bound to follow the provisions of the law strictly. Any departure will render them trespassers.

After entry and payment of damages or securing the same, the right of way over the land vests in the company. After filing of the bond, the owner can recover damages *only*.

An owner within the purview of the act is one who has some interest in the land at the time the injury was done. One who has acquired an interest therein, either in fee or as tenant for years, or as lessee after the injury has been committed, is entitled to no damages.

If there be errors in the view or any part of the proceedings, the remedy is to file exceptions in court, and if not sustained, to certiorari the proceedings. When, however, an appeal is taken within the thirty days allowed by law to the report of the viewers, all irregularities are waived, and all the requirements of the statute are presumed to have been done.

When a party having knowledge of the possession and use of the land by a railroad company, afterwards takes a lease of the coal beneath, he cannot require the company to remove the track, and his only remedy, if he has any, must be under the statute for damages.

Injunction.

Opinion delivered December 22, 1873, by

Walker, J.   This is a bill in equity presented to the court, praying for equitable relief to restrain the defendants by writ of special injunction, preliminary until hearing, and perpetually thereafter from mining and removing any coal below the surface of the ground over which the inclined plane, known as the Mahanoy Plane, passes.

Upon filing bond the writ issued—an answer was put in by Lawrence, Merkle & Co. (lessees of the land) but none on part of the owners of the land. Depositions were taken, and the case was ably argued by counsel on a final hearing.

The bill sets forth that the Mahanoy and Broad Mountain Railroad Company was chartered under the provisions of the Act of Assembly of 19 February, 1849, and that about the year 1860 the said railroad was completed, including the inclined plane, from the top of the mountain to Frackville 2,800 feet down the slope of the mountain; that the Plane was constructed at great expense, is in constant use, and is the main outlet of coal in the Mahanoy Valley, and that millions of tons of coal pass over

it every year; that the said Railroad Company acquired the title to the right o way over the land, under proceedings in Court and by release from John Gilbert and the other land owners on 2 November, 1868; that by virtue of certain acts of Assembly set out in the bill, this railroad was consolidated and vested in the Philadelphia and Reading R. R. Co.; that the respondents subsequent to the entry of the Mahanoy and Broad Mountain R. R. Co. upon the land, because the lessees of the right to mine coal in said land; that they (the respondents) are now about mining and removing the coal immediately under the plane, and that the plaintiffs have notified the respondents not to proceed, and to which notice the said respondents have paid no attention.

The record shows that upon petition of the Mahanoy and Broad Mountain R. R. Co., presented on 17 November, 1862, to December, 1862, No. 291, setting forth among other things, that the Company were unable to agree with the owners of the land about to be taken and occupied by the railroad, the Court of Common Pleas of Schuylkill County appointed viewers to assess the damages as required by the act of Assembly; that the said viewers made report on 3 February, 1863, which was referred back, and a revised report was afterwards made and filed. From this second report the owners of the land appealed to the court, and on same day filed their recognizance.

On 2 November, 1868, the company paid $570 to the owners, and took a re-lease from them which was recorded on 16 January, 1869, and an agreement was filed by order of court, on same day signed by the parties to the suit, discontinuing it.

On 1 January, 1868, the owners leased the right to mine coal in this land (over which the plane passes) to Lawrence, Merkle & Co., the respondents. The plaintiffs claim this easement by right of eminent domain delegated to them by the state by virtue of the provisions of the act of Assembly of 19 February, 1849, termed the general railroad act, and its supplement of 9 April, 1856, and they contend that the removal of the coal beneath the surface will destroy the inclined plane and forever deprive them of the right of way over the land; that this being the great thoroughfare for the transportation of coal from the Mahanoy valley, the public interests imperatively demand that this avenue shall be left open, free from peril and detention. Lawrence, Merkle & Co., the respondents, in their answer admit most of the material averments of the bill, but claim that they have an interest in the land as lessees from John Gilbert and the other owners by agreement dated 1 January, 1868, by which they have the privilege to mine all the coal beneath the plane, and for which they have received no compensation; that as to them, they say the plaintiffs are trespassers, and have no right to invoke the aid of a court of equity to restrain them from the enjoyment of their legal rights under the lease.

The right of eminent domain is one of the attributes of the sovereignty of the State, invaluable to the commonwealth, and cannot in any way be restricted, except as provided by the 10th section of Article IX of the Constitution, which provides *that no man's property shall be taken or applied to public use, without the consent of his representatives and without just compensation being made.* This is a limitation upon the right of eminent domain. Gilman *v.* Sheboggen, 2 Bl. 510 ; and is decided to be a *disabling*, not an *enabling* clause. Harvey *v.* Thomas, 10 Watts 66.

It is also further provided by the 4th section of Article VII that, "*the legislature shall not invest any corporate body or individual with the privelege of taking private property for public use, without requiring such corporation or individual to make compensation to the owner of said property, or give adequate security therefor, before such property shall be taken.*" The distinction being that when the state exercises the power of eminent domain, it must provide the *means* of payment before taking the property, *but a corporation must pay or secure its price.* McClinton *v.* Pittsburg and F. Wayne, 16 P. F. S. 404. And when a corporation takes land, the owner has a right to trial by jury, which he has not, when the State takes it by right of eminent domain. The Pa. R. R. Co. *v.* Ger. Luthern Cong. 3. P. F. S. 445. And the State has the right to six per cent. of all land by express reservation. Commonwealth *v.* Fisher, 1 Pa. Rep. 462.

While the state may delegate her right of eminent domain to a corporation or individual, (Brown *v.* Corey, et al. 7 Wr. 504,) it can only be exercised for public purposes intended to benefit the public. Lance's appeal 5 P. F. S. 16. For the right of property in every well-regulated community is subservient to the general welfare. It may be exercised not only for the public safety, but also for the interest, or even convenience of the state or its inhabitants. It does not authorize the government to take the property of one citizen and transfer it to another where the public is not interested in the transfer. Such an arbitrary exercise of power would be an infringement of the constitution, as not being within the power delegated by the people to the legislature. Pittsburgh *v.* Scott, 1 Barr 314.

The act of 19 February, 1849, (Pur. Dig. 1219 Pl. 35) provides "that before a company shall enter upon or take possession of any lands or materials, they shall make ample compensation to the *owner* or *owners* thereof, or tender adequate security therefor "

It should be borne in mind that the right of a railroad company is only to occupy the land, and is an *easement* not an *interest* in the land. Western R. R. Co. *v.* Johnston, 9 P. F. S. 290; Big Mountain Imp. Co. appeal 4 P. F.S. 361, and cases cited. And the owner is bound to leave proper supports so as not to impair the surface. Harris *v.* Ryding, 5 M. & W. 60; Jones *v.* Wagner, 16 P. F. S. 429; Rogers on Mines, 200-201, 459-460; Washburn on easements, *478-9. Were Lawrence, Merkle &

Co. (the lessees) owners of the land on 1 January, 1868, in the sense of the statute?

Tenants for years are owners within the perview of this act (N. Pa. R. R. Co. *v.* Davis and Leeds, 2 C. 238.) And a person having a life estate is entitled to compensation (Borough of Harrisburg *v.* Crangle, 3 W. and S. 460; Railroad *v.* Boyer, 1 Harris 497;) so is a lessee (Turnpike Road *v.* Brosi, 10 Harris 29;) and the license of the owner would not effect the tenant's interest (Brown *v.* Powell, 1 Casey 229.)

The respondents under these decisions would without doubt be entitled to compensation, if they had any interest in the land at the time it was taken by the company. They contend that as their rights became vested in January 1868, the subsequent release of the owners in November following, could not effect them. To ascertain this, it is essential to determine the time when the right to the land vested in the company, and the right to compensation passed to the owners—for only those who were owners at that time, (to wit: *the time when the right of way vested in the company*), are entitled to damage, not *subsequent* owners by purchase or otherwise.

Did the right of way vest in the company, before the appeal was taken in March 1863, or when the release was executed in November 1868?

The company can only take the land by paying for it or securing the payment. Before this is done the land belongs to the owner. He may bring his action of ejectment for it. McClinton *v.* Pittsburg, Fort Wayne & Chicago R. R. Co, 16 P. F. S., 404. Or he may sue the company as trespassers, for every act of theirs is tortious. Western R. R. Co., *v.* Johnston, 9 P. F. S., 290. Or they may be enjoined before compensation is made. Jarden *v.* P. W. & B. R. R. Co., 3 Whart. 502; Masson's Appeal, 20 P. F. S. 30. For they are bound to proceed as the act prescribes. Brown *v.* Powell, 1 Casey, 229. "And as the exercise of eminent domain is in derogation of private right, the authority must be strictly construed *What is not granted is not to be exercised.*" Dwarris on statutes, 750; Allegheny *v.* Ohio & Pa. R. R. Co., 2 C., 355; Lance's Appeal, 5 P. F. S., 16; Vanhorne *v.* Dorrance, 2 D., 310. "Public grants to corporate bodies must be construed strictly." Packer *v.* The Sunbury & Erie R. R. Co., 7 Harris, 211. If there be any irregularities in the proceedings of the viewers, or errors in the record, the owner may file exceptions in court, and if dissatisfied, he still has his remedy by *certiorari* in the supreme court. Hall's Appeal, 6 P. F. S., 238; Retienbaugh *v.* Chester Valley, 9 Harris, 100. He may do all this and yet retain the full title to the land. After filing of the report of viewers and within thirty days, if the amount awarded him be insufficient he may appeal and have a trial by jury.

There is no formal transfer required of the right to occupy the land. This right by operation of law *eo instanti* vests in the company, after entry and payment of damages, or filing the bond for those interested as pro-

vided by the act. After an appeal is taken everything previously required, is presumed to have been done, and every irregularity is waived.

The owner is powerless to recover the land again. The bond filed under the act, is the security for the damages, and the damages are substituted for the land, and this security is for damages occasioned as well by the construction, as the location of the road. Wadhams v. Lackawanna and Bloomsburg R. R. Co., 6 Wright 303; for it would be inequitable to hold that an owner might take his chances for damages before a jury, and failing to recover the figure he placed upon them, turn around and claims the land, and treat the company as trespassers.

Hence it has been ruled that when a party intends to stand on irregularities in the record of initial proceedings, *Certiorari* is the remedy to have the proceedings set aside for irregularities. *Appeal waives this*. Delaware R. R. Co. v. Burson, 11 P. F. S. 379. After appeal the maxim *"omnia praesumuntur rite esse acta"* is not only applicable to the judgments of courts, but it ordinarily applies to matters of form and order. Church v. Railroad, 9 Wr. 342. The taking of the appeal therefore admits the entry of the company, and the filing of the bond with approved security, and by these acts the right of way passes to and vests in the company. Compensation being made, the title of the owner will be vested in the company. McClinton v. Pittsburg & Fort Wayne, 16 P. F. S. 404. If the respondents have any interest not covered by the bond, their right exists to petition for viewers. They must exhaust their statutory remedy before they can otherwise act. High on Injunctions, § 394; McKenney v. Mon. Navig. Co., 2 Harris 65; Railroad v. Boyer, 1 Harris 500. It is admitted that the respondents had no interest in the land, when the appeal was entered. As the bond was substituted for the damages, none but the owners at that time could recover upon the bond. For the jury are to value the injury to the property at the time the injury was suffered. Schuylkill Navig. v. Thoburn, 7 S. & R. 411. If the very next day the owners had sold the land in fee simple, it is certain that this claim for damages would not pass to the purchaser. Zimmerman v. Union Canal, 1 W. & S. 346; Schuylkill & Susquehanna Navig. v. Decher 2 W. 343. Hence a *less* interest (such as a right to mine coal below the surface) would not pass. Therefore no claim for damage could possibly pass to the lessees. Sibbald & Mann's Appeal, 6 Harris 249.

The evidence shows that the respondents were not ignorant of the possession of the land by the company many years before they leased and of their improvements and expenditures and since the date of their lease they have not sought their statutory remedy. One who stands by in silence and sees the company expend their money in improvements would be estopped in equity from regaining possession of the land and his only remedy will be for damages sustained. Western R. R. Co., v. Johnston, 9 P. F. S, 290; Big Mt. Imp. Co. Appeal, 4 P. F S., 361; High on Injunctions, §397; Hentz v. Long Island, 13 Barb, 646; Erie v. Dela-

ware, 6 C. E., Green, 283 ; Washburn on Easement, *63 and notes.' "And where large improvements have been erected, considerations of public policy, as well as the recognized principles of justice between parties require the courts to hold that in such cases *the property of the owner cannot be reclaimed, and there only remains to him a right of compensation.* Under such circumstances his omission is an implied assent, *for he who will not speak when he should, will not be allowed to speak when he would.*" Goodin *v.* Cincinnati, 18 Ohio St. 169, per Welsh, J. If this coal be worked out the public interest must severely suffer, a great thoroughfare be broken up, and the company's vast expenditures be rendered valueless. For these reasons the special injunction was property issued and should remain.

Decree accordingly.

*George de B. Keim*, Esq., and *James Ellis*, Esq., for plaintiff ; *Charles Brumm*, Esq., *Lin Bartholomew*, Esq., for respondents.