## Harvey *against* Thomas.

10 W 63
171 199

10 W   63
25 SC ⁸471
f 26 SC ¹ 40

The act of the 5th May 1832, authorizing the construction of lateral railroads to connect private property with the public improvements, is not unconstitutional.

A, being the owner of a coal mine, proceeded, under the act of 5th May 1832, to ascertain the amount of damage which B would sustain by reason of the location of a railroad across his land; and the matter was proceeded in, so that a verdict was rendered for the amount of damage in favour of B. A then entered upon the land of B, and made the road, before a judgment was entered on the verdict: *Held*, that though the proceedings thus had by A did not furnish a justification of the trespass, yet they protected him from vindictive damages.

The docket entry, upon proof of the loss of the other part of the record, is competent evidence: and parol proof may be given of the contents of that part of the record which is lost.

The act of the 5th May 1832, does not contemplate that the petitioner for a road to the public works, should own land at the point of connection; he may use his road there consistently with the interests of the owners of the land.

ERROR to the common pleas of *Luzerne* county.

Jameson Harvey against Freeman Thomas. Trespass *quare clausum fregit*, brought to August term 1839. On the 5th May 1832, an act of assembly was passed, authorizing the location and construction of lateral railroads connecting with the public improvements, and prescribed the mode of obtaining the same; in pursuance thereof, the defendant, Freeman Thomas, petitioned the court of common pleas for the appointment of viewers to ascertain the amount of damage Jameson Harvey would sustain by reason of the railroad which he proposed to make through his land. The viewers reported that he should pay 100 dollars damages; from this report Harvey appealed; and it was afterwards, to wit, 15th April 1835, tried by jury, who found 65 dollars damages. On the same day a rule to show cause why a new trial should not be granted was entered. On the 28th May, 1835, rule discharged.

Nothing further was done until the 3d August 1839, when a rule was entered to show cause why judgment should not be entered on the verdict as of 28th May 1835. 14th November 1839, rule discharged, and the court directed judgment to be entered as of 3d August 1839, when the jury fee was paid; and at the same time, the plaintiff, Freeman Thomas, obtained a rule to bring the 65 dollars, the amount awarded by the jury, into court and there paid the same; it having been previously tendered to the defendant, Harvey.

On the trial of this cause, it appeared that all the record of the foregoing proceeding was lost, except the docket entry, and the defendant offered to prove, by parol, the contents of the lost papers, to which the plaintiff objected, and the court overruled the objections and sealed a bill of exceptions.

The plaintiff asked the court to instruct the jury upon these points:—

1. There being no judgment on the verdict in the proceeding of Thomas *v.* Harvey, it was no justification of the trespass complained of in this suit.

2. That defendant is a trespasser unless his road is made precisely upon the ground laid down in his petition and specification.

3. That defendant had no right to occupy any part of the plaintiff's land, at the terminus of the road, for loading boats.

4. That the act of 5th May 1832, is unconstitutional. And at all events it was not intended to apply to any case but that where the petitioner for the road had the right of landing, or owned the land at the terminus of the road.

And the defendant asked the court to instruct the jury, that the

[Harvey v. Thomas.]

proceedings and assessments of damages given in evidence are conclusive upon the plaintiff, and he cannot recover in this suit.

*Jessup*, president, instructed the jury, that inasmuch as the defendant had not proceeded to have a judgment entered upon his verdict, and the money tendered before this suit was brought, the proceedings were not a justification to him; but that the record of them, as they stood, was evidence in mitigation of damages, and in this point of view it was permitted to go to the jury. The second point the court answered in the affirmative, and submitted the fact to the jury. In answer to the third point, the court said, that it was not necessary to the enjoyment of the road by the defendant, that he should be either the owner of the soil or of the right of landing or loading his boats on the navigable waters at the termination of the road: his right would be to reach the navigation, and that being a public highway, he would, when there, only be responsible for any injury he might do to the property or right of others. The court also instructed the jury, that the act of the 5th May 1832, is constitutional and binding: and directed them to find for the plaintiff the amount of actual damage which he had sustained by the erection of the road; but not for any consequential damage arising from injury to his landing, &c.

Verdict and judgment for 25 dollars damages, and costs.

*Campbell* and *Butler*, for plaintiff in error, cited *Str. Purd.* 146; 11 *Serg. & Rawle* 319; 1 *Saund.* 298; 6 *Bac. Ab.* 609; *Co. Lit.* 303; 3 *Whart.* 484; 1 *Penn. Rep.* 394; 1 *Bald.* 222; 1 *Yeates* 167; 9 *Serg. & Rawle* 22; 3 *Watts* 219; 1 *Whart.* 137; 2 *Whart.* 539.

*Wright* and *Woodward*, for defendant in error, cited 1 *Penn. Rep.* 464; 12 *Cons. Deb.* 211; 6 *Binn.* 509; 3 *Yeates* 153; 2 *Dall.* 304.

The opinion of the Court was delivered by

GIBSON, C. J.—It is proper, *in limine*, to say, that as no part of the evidence has come up with the record except what is contained in the bills of exceptions, we know not whether tender was made before or after judgment, or whether the point propounded in the first prayer arose in the cause at all. If it did not result from the evidence, the judge might omit to charge on it; and as error is not to be intended, we would have been bound, had he not noticed it, to suppose that it had not a legitimate place in the cause. But he did notice it, and gave the direction prayed for, with a very proper qualification, that though the proceeding in the common pleas did not furnish a justification of the trespass, it at least took away all pretext for vindicatory damages. And the same may be said of the second prayer, which was answered affirmatively, by directing that if judgment had been entered on the verdict, if tender had

been made in pursuance of it, and if the road had been constructed according to the requisitions of the act, there would have been a full and perfect defence; for from this, the jury must have inferred that there could be no defence without the concurrence of all of them. Besides, any omission on this head could do the plaintiff no harm, for the jury actually found for him; and every thing beyond that had relation to the quantum of the damages. On that ground alone, an error, if there were one, would be immaterial.

The third prayer was properly rejected. Nothing in the statute or in reason, requires a petitioner to be the owner of the land at the entrance of the route into the public thoroughfare. It was not contemplated that he should have a depot at the junction; and there is neither reason nor enactment for the plaintiff's principle. The road might, therefore, be lawfully laid on the ground which it occupies; and as to intrusion, there is no evidence legitimately before us, nor is there any thing even in that which has been put upon our paper books irregularly, to show that the defendant had occupied any part of the plaintiff's ground on the pool, or prevented him from using it as he pleased. The railroad was carried into the stream on a platform; whence the coals were discharged by a shute into boats lying parallel with the shore. What the intervening space was, it is not material to inquire: the plaintiff's right of exclusive possession extended not one inch beyond low water mark, and if there was a trespass at all, it was committed on the public. An unreasonable occupancy of the pool, might have subjected the defendant to a prosecution for a nuisance; but as to the plaintiff's right in it, the case stands on the principle of Shrunk *v.* The Schuylkill Navigation Company, 14 *Serg. & Rawle* 71. The defendant might occupy any part of the stream without being answerable to the plaintiff or any one else, for preventing boats from coming to lie at the landing.

The most material point in the cause, is that which involves the constitutionality of the statute on which the defendant's right is founded; but it is one about which little need be said. If there is an appearance of solidity in any part of the argument, it is that the legislature have not power to authorize an application of another's property to a private purpose even on compensation made, because there is no express constitutional affirmance of such a power. But who can point out an express constitutional disaffirmance of it? The clause by which it is declared that no man's property shall be taken, or applied to *public* use, without the consent of his representatives, and without just compensation made, is a disabling, not an enabling one; and the right would have existed in full force without it. Whether the power was only partially restrained for a reason similar to that which induced an ancient lawgiver to annex no penalty to parricide, or whether it was thought there would be no temptation to the act of taking the property of an individual for another's use, it seems clear that there is nothing in the constitution

[Harvey v. Thomas]

to prevent it; and the practice of the legislature has been in accordance with the principle, of which the application of another's ground to the purpose of a private way, is a pregnant proof. It is true that the title of the owner is not divested by it; but in the language of the constitution, the ground is neverthless "applied" to private use. It is also true, that it has usually, perhaps always, been so applied on compensation made; but this has been done from a sense of justice, and not of constitutional obligation. But as in the case of the statute for compromising the dispute with the Connecticut claimants, under which the property of one man was taken from him and given to another, for the sake of peace, the end to be attained by this lateral railroad law, is the public prosperity. Pennsylvania has an incalculable interest in her coal mines; nor will it be alleged that the incorporation of railroad companies, for the development of her resources, in this or any other particular, would not be a measure of public utility; and it surely will not be imagined that a privilege constitutionally given to an artificial person, would be less constitutionally given to a natural one.

The competency of the docket entry, the other part of the record being lost, is incontestable. A part of a record may always be introduced on proof that nothing which can be had remains behind; and the proof of contents, to supply the place of the part lost, was as clearly competent.

Judgment affirmed.