# Hays *versus* Risher.

Under the lateral railroad law of 25th May 1832, the viewers, and, in case of appeal, the court and jury, are to decide whether the proposed road is necessary and useful for public or private purposes, and to assess the damages of the intervening owner; but they have nothing to do with the location of the road; that is to be done by the petitioner on his own responsibility.

The court is bound to appoint viewers, if the petitioner bring his case within the act.

A party cannot file exceptions to a report of viewers, and at the same time appeal from their report.

On the trial of the appeal, evidence of what was usually paid for similar privileges, is inadmissible; the party is only entitled to compensation for the injury actually sustained by the location of the road through his land.

The lateral railroad acts are constitutional.

[Hays *v.* Risher.]

ERROR to the District Court of *Allegheny county.*

This was a proceeding under the lateral railroad Act of 25th May 1832, and its supplements, by Daniel Risher, to locate a railroad, 20 feet in width, from his lands, mill, coal mines, &c., lying within three miles of the Monongahela river, over the intervening land of James H. Hays, to the Monongahela Slackwater. Navigation.

On the 27th June 1857, the plaintiff presented his petition, accompanied with a diagram of the proposed road; and viewers were appointed, who reported in favour of the road, and assessed the defendant's damages at $500. The defendant filed exceptions to the report, and on the same day, appealed therefrom; whereupon, the court below, at the instance of the petitioner, dismissed the exceptions.

The plaintiff, on the appeal, filed the following statement in writing, alleging:—

1st. That he is the owner of the lands, mill, coal mines, &c., mentioned and described in his petition as belonging to him.

2d. That the railroad mentioned and set forth in said petition is necessary and useful for public or private purposes.

To this statement the defendant pleaded:—1. That the plaintiff was not the owner of the said land, &c. 2. That the said railroad was not necessary for public or private purposes.

The proposed road commences on the land of the plaintiff, at the distance of about 400 feet from where his coal crops out, and after leaving his land, traverses the land of the defendant, in nearly a straight line, in the direction to the river, for the distance of about 140 perches, and thence, when within about 50 yards of the river, diverges nearly at right angles, and pursues the course of the river, preserving about the same distance therefrom, through defendant's land for about 66 perches more, until it reaches other lands of plaintiff situate upon the river—the said divergence not being necessary in order to reach the river, but for the purpose of getting to land of plaintiff situate upon the river.

The plaintiff, on the trial, having put in evidence the petition, and other proceedings, offered evidence tending to prove that he was the owner of the lands, mill, mines, &c., mentioned and described in the petition; and also that the road in question, or some railroad, was necessary and useful to carry the product of his mill and mines to market; and to prove the amount of damage that the defendant would sustain by reason of the opening, constructing, completing, and using the said railroad. And, under exception as to their competency, he examined three of the viewers as witnesses on his part.

The defendant offered to prove by R. E. McGowin, that the plaintiff might have located a route over defendant's ground much shorter, cheaper, and more convenient for purposes of access to

[Hays *v.* Risher.]

the slackwater navigation, involving much less damage to the defendant than the route indicated in the present proceedings; for the purpose of showing that the present location was not reasonably necessary within the meaning of the Act of Assembly. He also proposed to prove by the same witness, that the viewers refused to receive evidence offered by him as to the alleged necessity for the road, and the amount of damage likely to be sustained by reason of the location and construction of the same. And he further proposed · to prove by the same witness the price that was usually paid for rights of way, under like circumstances of location, for coal lands lying back from the Monongahela river, through the intervening lands; for the purpose of showing the actual market value of the right now claimed by the plaintiff through the lands of the defendant. To these offers the plaintiff objected, and the court rejected the evidence; to which the defendant excepted.

The evidence being closed, defendant submitted the following points, and prayed the instruction of the court thereon:—

1. That if the road projected is only necessary for the private uses of the plaintiff, there is no authority in the constitution for taking the property of the defendant without his consent therefor; and the Act of Assembly on which these proceedings are founded, so far as it pretends or professes to authorize the same, is a violation of the natural rights of the citizen.

2. If the court decline to charge as requested in the preceding point, then they are requested to charge the jury that, notwithstanding that the plaintiff had a right in the first instance to lay out and locate the ground which he thought necessary for the use of his said road, yet it is the province and duty of the jury to decide, from all the evidence in the cause, whether that particular location is necessary; and if they should believe that it is not necessary, their verdict must be for the defendant.

3. If the jury believe that the plaintiff might have selected another route for his road, combining the necessary advantages as to distance, adaptation of ground, cost of construction, and reasonable facilities at its terminus, and yet less prejudicial to the defendant, it was incumbent upon him to have done so, and the location chosen is not necessary within the intention of the act; and the verdict must be for the defendant.

4. That if the jury believe that the plaintiff might have selected a different location, which would be less prejudicial to defendant than the present one, and at the same time afford the plaintiff the facilities for transportation of his minerals, &c., contemplated by the Act of Assembly, then it was incumbent upon plaintiff to have made such location of his road; and not having done so, the verdict of the jury must be for the defendant. .

5. That the fact of the plaintiff being the owner of ground at

[Hays *v.* Risher.]

the river suitable for the terminus of a road, will not excuse a deviation, at the expense of the defendant, from the most direct and reasonably practicable route to the river in order to reach that particular ground.

6. That in case of a deviation from the most direct route to the river, the burden of proving the necessity of such deviation is upon the plaintiff.

7. That if the plaintiff by his lessee (Bushnell) is already in the enjoyment of a right of way or railroad privilege, from the mines referred to in his petition to the slackwater navigation, over the lands of the defendant, which is now or could be readily made sufficient for his accommodation, he is not authorized to claim another and distinct road through the same lands; and the jury would be well warranted in finding that no other road is necessary to him, under the provisions of the Act of Assembly.

8. That with a view to the ascertainment and limitation of the plaintiff's claim, as well as to the measurement or estimation of the damages which will be sustained by the defendant, it was the duty of the former to define it by a specification of record showing the elevation at which he proposed to construct his road, and the embankments and excavations which it would involve; and not having so done, the verdict of the jury must be for the defendant.

9. That if, however, in the opinion of the court, the lands of the defendant may be taken for the private purposes of the plaintiff at his arbitrary will and pleasure, and in such manner as to accommodate his river land, without reference to the consideration whether a route less injurious to the defendant might not have been selected, it would be the duty of the jury to award the most liberal damages; and that, in estimating the same, they are not to be confined to the mere value of the land taken and the injury inflicted by embankments and excavations, and the cost of fences or enclosures which may be rendered necessary thereby, but must make ample allowance for all the annoyances and inconveniences to which the defendant is likely to be subjected by making a highway of his estate.

10. That to entitle a party to make a road over the lands of another, the route proposed in the petition must commence at the coal mine intended to be accommodated, and not at any point short of it, which would enable him to withdraw the omitted portion from the use of others who might desire to connect with it.

The court below (WILLIAMS, J.) declined to charge as requested in the 1st, 2d, 3d, 4th, 5th, 6th, 8th, and 10th points; and affirmed the 7th point, if the jury should find the facts to be as therein stated; adding, "the jury will determine for themselves whether the Bushnell road would answer the purposes of the plaintiff, and whether he has any right to use it. To the 9th point the court answered as follows:—"This point is affirmed, with the exception,

[Hays *v.* Risher.]

that the court decline to charge that 'it would be the duty of the jury to award the *most liberal* damages.' The defendant is entitled to a full and fair compensation for all the damages the construction and use of the proposed road may occasion him; and, in estimating them, the jury may take into consideration all the matters suggested in this point."

The learned judge also, in his general charge, instructed the jury as follows:—

" Under the issues formed by the parties in pursuance of the order of court in this case, three questions are presented for the determination of the jury:—

" 1st. Is the plaintiff the owner of the lands, mills, coal mines, &c., mentioned and described in his petition as belonging to him?

" In regard to this question, there can be no doubt. The plaintiff has shown deeds for all the lands mentioned and described in the petition, and he has shown, if you believe the evidence, that he and those under whom he claims have been in the peaceable, continued and exclusive possession of all of said tracts for a period of twenty-five or thirty years. He has shown such a title as would enable him to recover in ejectment. The jury can have no difficulty on the first question. The defendant's counsel concede that the plaintiff is the owner of the lands described in the petition.

" 2d. Is the proposed road necessary and useful for public or private purposes?

" The plaintiff does not allege here that the road, as laid out, is necessary and useful for public purposes; but he claims that it is necessary and useful for his own private purposes, to enable him to take his coal to market, and enable him to carry on his mills and distillery with profit and advantage. The term 'necessary,' as used in the act, does not mean an absolute, but a reasonable necessity." (The court here read to the jury that part of the charge of Judge JESSUP, having reference to the construction of this act, in Harvey *v.* Lloyd, 3 *Barr* 333–4, and adopted it as a part of their instructions to the jury in this case.)

" If the jury are satisfied that the proposed road is necessary and useful for the plaintiff in order to enable him to get his coal to market, and to carry on his mills and his distillery with profit and advantage—that he has no other road which he can use for this purpose—then the jury will next ascertain and determine the amount of damages which the defendant will sustain by the opening, constructing, completing, and using the said road.

" The defendant is entitled to full compensation for the land actually taken, and for all the injury to his other lands, and all the damages he may sustain from the annoyance and inconvenience of every kind and description, arising from the opening, construction, and use of the road as laid out over his land. The

[Hays *v.* Risher.]

damages ought to be sufficient to compensate the defendant for all the injury that will be done him by the construction and use of this road, but they ought not to be extravagant or unreasonable; and in estimating the damages, it will be the duty of the jury to take into consideration the advantages which may be derived by the defendant as owner of the land passed through by the railroad, in forming their verdict thereon."

To this charge the defendant excepted; and the jury having found in favour of the plaintiff, and assessed the defendant's damages at $500, and judgment having been entered thereon, the defendant sued out this writ, and here assigned for error:—
1. The dismissal of the exceptions to the report of viewers.
2. The admission of three of the viewers as witnesses for the plaintiff.     3. The rejection of the evidence proposed to be given by McGowin.     4. The refusal to charge as requested in the ten points presented by the defendant.

*G. P. Hamilton,* for the plaintiff in error.

*Woods & Loomis,* for the defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—It is a mistake to suppose that, under the latteral railroad law of 25th May 1832, the viewers, and in case of appeal, the court and jury, are to fix the location of the road. No such duty is assigned them by the statute.   On the contrary, the first section authorizes the petitioner to enter upon the intervening lands to survey and mark such route as he shall think proper to adopt, and requires him to set forth in his petition to the court, the beginning, courses and distances of the selected route, and the point of its intersection with the public improvements.

By the 4th section, fifteen days' notice of the time of filing this petition is to be given, and if the road set forth is not such a one as the Act of Assembly contemplates, then is the time for the parties in interest to appear and object to the appointment of a view. I will not say that exceptions, most appropriate to be urged at that time, may not be taken at subsequent stages of the proceeding, but the better practice undoubtedly is, to arrest the proceedings *in limine,* if, on the face of the application, fatal objections are revealed.   The language of the act is mandatory, that the court shall appoint a view, but this means that they shall appoint a view only when the petitioner brings his case within the act.

The viewers when appointed are not to relocate the route adopted by the petitioner, but they are to view and examine it, and to decide whether it is necessary and useful for public or private purposes, and to report what damages the intervening owners will

[Hays v. Risher.]

sustain by reason of the construction of the road upon that route.

These duties of the viewers performed, the court confirms or rejects their report "as to right and justice shall appertain." Here another opportunity is presented to bring to the notice of the court any legal objections that may lie against the proceedings.

Or either party may appeal, when the duties assigned to the viewers become the duties of the court and jury. The appeal does indeed open up the case *de novo*, but the case is precisely that which was before the viewers. The jury have no more to do with locating the road than the viewers. They rejudge the questions passed on by the viewers, and these only.

The proceedings in this case were marked with great regularity. The petition described the road with all necessary precision. No objections were made to the appointment of viewers, and their report is full to every point. The defendant appealed and obtained the benefit of a trial by jury, and now, after judgment on their verdict, the first of the fourteen errors assigned is, that the court erred in dismissing the exceptions (nine in number) which he filed to the report of the viewers.

As to all the exceptions which related to the damages and the action of the viewers, the court were right in dismissing them, on the ground of the appeal; and as to the rest, their want of merit was a sufficient ground for dismissing them.

The chief ground of complaint both in the exceptions and the errors assigned is, that the plaintiff did not lay his road by a direct, and of course, the nearest line to the slackwater navigation.

This objection might have been taken when the petition was filed, but it could not have availed had it been. The act does not require the petitioner to adopt a straight line. The nearest route may often be the most impracticable and expensive, and the landing reached by it altogether unsuitable. Very good reasons were given in the argument for the deflection which the petitioner made from a right line, but his proposed road being pronounced by the viewers *necessary* and *useful*, it is quite immaterial whether it is as short as it might have been or not. The first road laid under this law (Harvey v. Thomas, 10 *Watts* 63) was not on the nearest route to the water.

The testimony of McGowin was offered to prove that the present location was not reasonably necessary within the meaning of the Act of Assembly, because there was one shorter, cheaper, and more convenient.

This was an attempt to relocate the road of the petitioner. This and similar offers were pressed upon the court under the misapprehension that the case involved a question in engineering. I

[Hays *v.* Risher.]

repeat that this was to mistake the Act of Assembly. The question, whether the route adopted by the petitioner was *necessary* and *useful*, was in the case, but whether a shorter, cheaper, or more convenient route could be found was not in the case, except as that question may have involved these inquiries.

The petitioner had every motive for adopting the best route, for the whole expense of construction, as well as the damages of the defendant, were to be borne by him. It was the policy of the enactment to intrust this question to his instincts of self-interest, setting over him such guards, however, as would compel him to repair all damages he might occasion.

If the statute had not referred the location to the petitioner, if it had left it open for viewers and jurors, it would have accomplished none of its purposes. It was designed to enable citizens to bring out their minerals and manufactures for transportation on the public works which the state had been at great cost to build. It was a mode indeed of pushing the public improvements up to every man's door, who was situated within three miles of any of the great lines. Each man was to do the work for himself under the jealous eye of the court, and subject to damages for injuries, but on a plan of his own. If a jury were to plan the work it would never be done. Supposing unanimity among them, which would not be very likely, he who was to execute would insist on guiding his own hand. Men do not commonly call in juries to project improvements of their estates, and the statute imposed no such necessity.

These doubtless were the views with which the court ruled all the vital points of the cause, and they ruled them well. McGowin's evidence was properly rejected, not only that which we have referred to, but that which related to what the viewers refused to hear, as well as that which proposed to show what was usually paid for rights of way over other lands.

On an appeal from report of viewers, of what possible consequence is it to prove that the viewers heard or refused to hear a particular piece of evidence? The correction of the error, if any, is one of the purposes of the appeal.

And the question of damages was a positive and not a comparative one. The plaintiff was entitled to receive what would repair his estate, not what was usually paid for similar privileges.

The only point that remains worthy of any especial notice is the constitutional question.

It is argued, as it has been in every case that has been up under the lateral railroad law, that it is an unconstitutional enactment: 10 *Watts* 93; 3 *Barr* 331; 8 *Barr* 134.

The act was designed, as already intimated, to promote a public object of very considerable importance. The 6th section requires

[Hays v. Risher.]

an account of the expenditure upon any road built under it to be returned to the court and filed, "*to the end that the said road and the privileges appurtenant thereto may be resumed by this Commonwealth whenever the legislature shall enact the payment to the proprietors of such railroad, their heirs or assigns, of the principal money expended in the construction of the same.*"

The act also makes the road in the hands of its proprietors virtually a public highway, and no private property is to be taken for its construction until compensation, ascertained as is provided, shall have been paid.

It is in effect the grant of a franchise to citizens, subject to resumption at the pleasure of the sovereign on reimbursement of the principal invested, without interest on the grant. It is not to be doubted, that in every instance where private property has been taken for the purposes of a lateral railroad, under this law, the Commonwealth might have taken it and constructed a railroad over it to connect her canals with mines, quarries, mills, and the like. When she granted her lands and permitted them to become private property, she threw in six acres *gratis* for every hundred she was paid for, that roads might be built as the future wants of the citizens should require.

To that extent she has a right to appropriate granted lands for purposes of highway, even without compensation, though it is a right she never exercises. But beyond the six per cent. she has a right to take according to the public exigency, on compensation made or tendered. Every good government must possess and occasionally exercise this right of eminent domain. Pennsylvania has always exercised it, and so far from her constitution containing anything to prohibit it, the provision securing compensation to the owner is an express license to take on that condition.

But it is not more clear that the Commonwealth might take land for a lateral railroad, than it is that she may authorize a private corporation to do it. All our railroad companies stand on this attribute of state sovereignty. And is it not as competent for the state to grant a franchise to a natural as to an artificial being? It would be passing strange if it were not.

The truth is, when a lateral railroad is laid upon intervening lands, private property is not taken for *private* use, and there was no occasion for Judge GIBSON's remark in Harvey v. Thomas, 10 *Watts* 63, that the constitution does not forbid such taking. The private property is taken for public use—for clear and definite objects of a public nature which are of sufficient importance to attract the sanction of the sovereign. That an individual expects to gain thereby, and has private motives for risking the whole of the necessary investment, and acquires peculiar rights in the work, detracts not a whit from the public aspects of it. The same thing

[Hays *v.* Risher.]

can be said of every railway corporation and of almost every public enterprise.

Until, therefore, somebody can prove the state to possess no right of eminent domain—can point out some provision of the constitution which forbids her to take private property for public use, no progress will be made in demonstrating the unconstitutionality of the lateral railroad law.

It was found, as her public improvements penetrated the interior, that many productive mines and manufactories situated near them were still separated by the land of an unneighbourly owner, which must be crossed, or tonnage be lost to the public improvements.

To compel such owners to admit a right of passage was not to take away from them a fair participation in the public improvements, and to compensate them for the land occupied was to do all they had any right to claim. They hold their lands as every man does, subject to the call of the government. The constitution was not made to prevent or hinder the government from improving the country and promoting the general welfare of the citizens; and when the selfish passions of individuals attempt to set up the instrument for such purposes they misapply it, and cannot expect the courts to help them.

Perceiving no error in the record, the judgment is affirmed.