## DAVID RANDALL *vs.* E. D. PAYNE & others.

## April Term, 1873.

MOTION TO DISMISS FOR WANT OF EQUITY.—A motion to dismiss a bill for want of equity on its face is limited, as a mode of defense, to cases where it appears, from the bill itself, that the court has no jurisdiction, or that there is no matter of equity whatever, and will not reach a case proper for equitable relief but defectively stated.

LOST PAPERS, EFFECT.—Although papers filed in a cause may be lost, they are still parts of the record, and the litigants are entitled to the benefit of them as-such, to be proved by the best evidence attainable, and a decree justified by such papers is not subject to be reviewed solely upon the ground of their loss at the time of its rendition.

BILL OF REVIEW, DECREE NOT WARRANTED BY THE BILL.—A decree not warranted by the allegations of the bill may be corrected by bill of review.

SAME, SAME.—Thus, where a bill was filed to enforce a lien retained upon certain lots conveyed by complainant to indemnify him against loss by reason of a specific vendor's lien debt reserved on land conveyed to him, and the decree was for the whole purchase-money of the land which far exceeded the vendor's lien debt, it was held error of law apparent, for which a bill of review would lie.

SAME, ERROR APPARENT.—An original and cross-bill constitute one suit, and a failure in the final decree to dispose of the questions raised by the cross-bill, would be error apparent to be corrected by bill of review.

SAME.—*Semble*, it is no ground for a bill of review that the cause was taken up and decided in the absence of counsel, though the absence was unavoidable, and the fact unknown to the party, nor will irregularities in the proceedings sustain a bill of review.

ORIGINAL BILL FOR FRAUD.—*Quære*, what averments will sustain an original bill for fraud?

*H. H. Harrison*, for complainant.

*M. M. Brien*, for defendants.

THE CHANCELLOR :—This is a bill filed in a double aspect, as an original bill in the nature of a bill of review, and as a bill of review for errors of law apparent. The defendants, E. D. Payne and wife, have moved to dismiss the bill for want of equity on its face. I held at the last term, in the case of *Quinn* v. *Leake* (*ante*, p. 67), that this motion, under the Code, § 4386, goes to the whole bill, and is limited, as a mode of defense, to cases where it appears, from the face of the bill, that the court has no jurisdiction, or that there is no matter of equity whatever; *Mayse* v. *Biggs*, 3 Head, 36 ; and that it will not reach a case proper for equit-

able relief but defectively stated. *Thompson* v. *Paul*, 8 Hum. 114. If, then, there is any equity on the face of this bill, even if it be defectively stated, the motion cannot prevail. *Colville* v. *Colville*, 9 Hum. 524.

The bill alleges that in the year 1865, the defendant, E. D. Payne filed his original bill in this court against the defendant John J. Beech and complainant Randall, alleging in substance that Payne on the 1st of September, 1858, purchased of the defendant, Beech, 70 3-4 acres of land in Davidson county, Tenn., for which he paid $10,612.50, and took a general warranty deed exhibited with the bill as Exhibit No. 1 ; that a part of the consideration for said land, as shown by said exhibit, consisted of four lots described, one of them being a 50 feet lot on the Franklin turnpike subsequently conveyed by Beech to Randall, which were encumbered as shown in said exhibit, and that Beech retained a lien on said 70 3-4 acres until the said encumbrances were removed. That on the same day, he, the said Payne, made the said Beech a deed for the lots, so given for said land, which is filed as Exhibit No. 2, " and which the bill charged showed that the said Payne had a lien on said lots." That sometime after a bill was filed by A. and J. Stretch to enforce a lien they had on the 70 3-4 acres for balance of purchase-money, and that Beech fraudulently refused to pay the same or to remove said lien, or to keep the covenants of his deed, but suffered a decree and sale of said land which was purchased by John D. James, and said Beech permitted the time of redemption to run out, whereby he, said Payne, lost the land and said $10,612.50, besides interest and costs. That Beech was insolvent, but that he, Payne, had a lien on the lots described in Exhibit No. 2, which lots were now claimed by Randall as purchased from Beech with notice of his, Payne's, lien. The bill concluded with a prayer that he, Payne, be permitted to enforce his lien on said lots described in Exhibit No. 2 to secure said sum of $10,612.50, with interest and costs, and for general relief.

The bill now before us further alleges that complainant,

Randall, on the 8th of November, 1868, filed his answer to said bill, admitting the trade between Payne and Beech substantially as alleged, and that the 50 feet lot then owned by complainant, Randall, was subject to a mortgage to the Nashville Building and Loan Association for money borrowed from the association by Payne; that this mortgage was a still subsisting lien on said lot, which had been conveyed by Beech to complainant, Randall, as shown by deed filed with the answer. That said answer, while admitting that a lien was retained by Payne on the 50 feet lot "*until the encumbrance on the* 70 3-4 *acres* was paid," stated that Payne had also retained a lien on the other three lots conveyed with the 50 feet lot, and that these lots should in equity contribute to the payment of the lien retained by Payne. The answer further stated that Beech in his deed to Payne for the 70 3-4 acres retained a lien on said land "until all the liens, mortgages, and other encumbrances on the 50 feet lot and other lots were fully paid off and removed, and also retained a lien expressly, on the face of said deed, until three notes on J. L. Jennings for $666.66 each therein described, given or assigned by Payne to Beech as part payment of the purchase-money for said 70 3-4 acres, were also fully paid off." The complainant further stated in said answer that the three notes of Jennings, endorsed by Payne and secured by lien on the 70 3-4 acres as aforesaid, were transferred and delivered to complainant, Randall, who was the *bona fide* holder thereof; that these notes were not paid at maturity and were duly protested for non-payment; and complainant, in his said answer, which was filed as a cross-bill, insisted that he should be substituted to the benefits of the lien on the 70 3-4 acres, which land, he charged expressly, was still the property of Payne, "he having redeemed the same, or in some way compromised the Stretch lien mentioned in the bill." And that the court would not enforce the lien claimed by Payne on the 50 feet lot, while the said Jennings notes, given for said 70 3-4 acres, endorsed by Payne, and held by complainant, Randall, were due and un-

paid, and while the mortgage to the building association, for the debt of Payne, on said 50 feet lot still existed. The answer, and cross-bill, further insisted that complainant, Randall, could in no wise be affected by the failure or fraud of Beech in permitting said 70 3-4 acres to be sold in the suit brought by A. and J. Stretch (this suit and the sale under it to James being admitted), except in the proportion which the 50 feet lot bore to the value of the other lots conveyed by Payne to Beech, and that Payne having paid off or compromised that lien, that the equities set up by the cross-bill as against Payne and the 70 3-4 acres were good.

This answer was filed as a cross-bill against Payne, the Nashville Building and Loan Association, John D. James and the owners of the other lots conveyed by Payne to Beech in part consideration for the 70 3-4 acres, and prayed relief in accordance with the suggestions as above of Randall's rights. Payne and the building association answered, but James failed to answer.

The bill before us further states, that the cause had been transferred from the Rule to the Trial Docket by Payne before it was ready for hearing, "and the cause was heard upon the pleadings and exhibits so far as they were then before the court," when the Chancellor, of his own motion, ordered Mrs. M. E. Payne, wife of E. D. Payne, to be made a party to the cross-bill; that complainant, Randall, in compliance with this ruling, filed his amended bill making her a party, and charging "that defendant, John D. James, had executed to defendant, Mrs. M. E. Payne, a title bond or agreement in writing, to convey her, upon her paying $1100 in gold, the said 70 3-4 acres, but that she had no estate or means of her own with which to pay the amount, and that the transaction was colorable and fraudulent, and the result of a fraudulent combination and collusion between said James and Payne and wife."

That Mrs. Payne filed her answer, on the 12th of October, 1872, which fails to answer any of the material allegations of the cross-bill, and might have been excepted to, but was not.

On the 17th of October, 1872, the decree complained of was rendered. This decree recites the sale by Payne to Beech of the, 70 3-4 acres, for the consideration of $10,612.50 paid "in certain lots and real estate as hereinafter described and shown," and that the land was encumbered with the purchase-money from Beech to Stretch, that Stretch filed his bill to enforce his lien "when said Beech neglected and fraudulently permitted said land to be sold," and it was purchased by James and was a total loss to complainant. "It further appeared to the court, says the decree, that complainant, in making to said Beech a deed for the lots, had reserved and retained a lien on the same to secure said $10,612.50 against the encumbrance and lien on the 70 3-4 acre tract." That Beech is insolvent and complainant's only security is said lien. The court thereupon gives complainant a decree against Beech for $19,527.50, the whole of the consideration for said land with interest, and declares the debt to be a lien on the lots conveyed by Payne to Beech, including the 50 feet lot held by Randall, which lot, the decree recites, was purchased by Randall "with full knowledge of complainant's lien." It is further decreed that the equities claimed against Mrs. M. E. Payne in the answer and cross-bill of Randall "are fully met and denied by her answer," and there is no proof to sustain the cross-bill, and the cross-bill is dismissed.

It is very obvious from the statements of the bill now before the court that the proceedings in the original cause are erroneous in several particulars. There seems to have been no *pro confesso* against James, and the owners of other lots, made defendants to the cross-bill, and the cause was not, therefore, properly ready for hearing. It is clear, moreover, that the complainant, Payne, was not, under the circumstances, entitled to have the cause heard on the 17th of October, 1872, the answer of Mrs. M. E. Payne having been filed only on the 12th of the same month, and the twenty days allowed by law, after notice, for excepting to the answer, not having elapsed. Nor was he entitled to supply

his own lost bill in the mode which seems to have been adopted, that is by simply filing a "supply bill," as it is called, without complying with the requirements of the statute, and procuring an order of court. Nor could the cause be properly heard, as the bill alleges it was, in the absence of material pleadings. But these are errors which cannot be reached by an original bill in the nature of a bill of review, nor by a bill of review. The remedy was by a petition for rehearing upon proper averments, or by resort to an appellate court. It is no excuse for a failure to resort to these remedies, that the complainant's counsel was engaged in other courts, and that the proceedings were had without notice to him. It is the duty of litigants to be in court when their cases are called, either in person or by solicitor, and to see that proper steps are taken for the protection of their rights. It has been expressly decided, that it is no ground for a bill of review that the cause was taken up and decided in the absence of counsel. *Quarrier* v. *Carter*, 4 H. & Munf. 242 ; *Wiser* v. *Blachly*, 2 Johns. Ch. 490 ; though the absence was unavoidable, and the fact unknown to the party. *Franklin* v. *Wilkinson*, 3 Munf. 112. And it need scarcely be said that mere irregularities in the proceedings are no ground for a bill of review. *La Grange Railroad Company* v. *Rainey*, 7 Cold. 420 ; *Herd* v. *Bewley*, 1 Heisk. 525.

The allegations of the bill against the validity of the decree sought to be impeached are : "That the cause in the first place was not heard at all, and in the second place that the said decree was fraudulently procured by the defendant, Payne, to be entered, upon an incorrect and erroneous statement of the facts and as to the pleadings, both in the decree, and to the Chancellor, which misled the Chancellor, and induced him to permit the decree to be entered without hearing the cause at all."

An original bill in the nature of a bill of review lies only for fraud. There must be such facts or circumstances in the procuring of the decree as renders it inequitable in the successful party to retain the advantage thus acquired, which

facts or circumstances were not known to the opposite party at the time, and for not knowing which he is not chargeable with neglect or inattention. 1 Story Eq. Jur., § 252, a. What facts and circumstances will constitute the fraud within the rule, have not been defined by the courts, nor is it possible or proper to attempt a definition. Fraud is so protean in its forms, that each case may well be left to turn upon its own facts. It is obvious, however, that it is not every injustice or wrong in a decree which will justify a resort to this remedy, otherwise there would be no stability in judicial proceedings. Some things we may readily determine will not be sufficient to set aside a solemn decision which has assumed the form of a decree signed and enrolled.

It will not do, of course, simply to charge that the decree has been fraudulently obtained, for that is the allegation of a conclusion which the interested party cannot be permitted to draw. There must be positive averments of facts from which, if proved, the court can see that fraud must have intervened. Story Eq. Pl. §§ 639, 426.

Nor will it do to allege facts merely in conflict with the conclusion reached in a decree, or tending to show that the rights of the successful party have been overestimated. For, this might be done in every case where there is a conflict of testimony. Few contested cases could escape a rehearing upon an original bill in the nature of a bill of review, if such averments alone would suffice. The fraud, it has been said by very eminent judicial authority in a recent English case, must be actual and positive, showing a *mala mens*, a meditated and intentional contrivance to keep the opposite party and the court in ignorance of the real facts of the case, and thus obtaining the decree. *Patch* v. *Ward*, L. R., 3 Ch. App. 203.

Tested by these rules, it will be somewhat difficult to sustain the present bill. For, even if it be conceded that the complainant has obtained a decree not justified by the pleadings, and beyond what he was entitled to, and that this result was brought about by his solicitor overestimating his

client's rights, and ignoring those of his adversary, yet it does not necessarily follow that this end was attained by intentional contrivance to keep the court and the opposite party in ignorance of the real facts, or by wilfully corrupt design. If the charge of fraud could be sustained against a lawyer because he has seen only his client's side of the case, and ignored that of his opponent, very few of us would go unwhipped of justice. Let us see, then, whether the facts as alleged sustain the general averment of the bill.

The charge that "the cause was not heard at all" is qualified by the statement, made in immediate connection with it, that the decree was procured "upon an incorrect and erroneous statement of facts, and as to the pleadings, to the Chancellor, which misled the Chancellor, and induced him to permit the decree to be entered." There was, then, a hearing of some sort by the Chancellor, and a permission from him to enter the decree. What is meant by the general charge is explained by other specific averments of the bill. It is alleged that the whole of the pleadings and papers were not read, nor offered to be read, and that some of them could not have been read for they were lost or mislaid, and not on file when the cause was heard. Thus, it is said that the Rule Docket shows that Payne answered the cross-bill, but the answer was not on file, nor read or offered to be read; that the amended cross-bill and the answer of the Building Association to the cross-bill was not read or offered to be read. These charges raise the issue whether the failure to read or offer to read any pleading in a cause at the hearing, is such a fraud by the successful party as will vitiate a decree.

Thus stated, there cannot be the least doubt as to the proper answer. The failure to read, or offer to read any pleading, or other paper on file, is not even error, much less a sufficient ground for a charge of fraud. It never has been an imperative requirement in the court of chancery, or any other court, to read all the papers in a cause, whether the losing party is represented by counsel or not. In England,

the practice always has been to allow the counsel to read only such parts of the record, often a very small part, as he deems necessary to enable the court to decide the particular point in controversy; and where the defendant fails to appear, the complainant, without reading the papers at all, is permitted to take such a decree as he thinks he is entitled to. This has also been the prevailing usage in this state. The rule of our supreme court, as we all know, is to permit only such parts of the record to be read as are material to the decision of the errors assigned, the practical working of which is that, for the most part, the record is not read at all in open court. So, we know that the learned circuit judge of the United States for this circuit neither reads the records of chancery cases tried before him, nor permits them to be read, but requires the counsel to state their substance. It is impossible, therefore, to assign as error the mere failure to read, or offer to read any papers in a cause at the hearing, and, *a fortiori*, to found upon such mere failure a charge of fraud.

The complainant relies, in this connection, upon the fact charged by him that Payne's original bill was lost, and was never legally supplied, and that Payne's solicitor had prepared and put upon file what he calls a "supply bill," on which the decree was rendered; and upon the further fact that other papers, the amended cross-bill and Payne's answer thereto, were not on file at the hearing. But the remedy in regard to the so-called "supply bill" was a motion to take it off the file, not an original bill. Nor can fraud be necessarily predicated of the fact that a decree was taken when certain papers were lost or mislaid. Although the papers in a cause may be lost, yet having once become records they are, in the eye of the law, always records, and litigants are entitled to the benefits of them as still existing. *Faust* v. *Echols*, 4 Cold, 397; *Harvey* v. *Thomas*, 10 Watts, 63 (2 Amer. Rail. C. 196); *Renner* v. *Bank of Columbia*, 9 Wheat. 581; *Riggs* v. *Tayloe*, Ib. 483; 1 Gr. Ev. § 509; *Burton* v. *Driggs*, 20 Wallace, 125, 134. Care must be taken

10

not to go beyond what the records which have been lost would justify, otherwise a bill of review for error apparent would lie. But the diligent litigant is not compelled to wait upon his adversary to supply lost papers on his side. It is the duty of the adversary to be present when his case is called, and attend to his rights then and there by proper objections. If he fails to do so, he cannot be heard to say that a decree justified by the records, although some parts of them may be lost, was fraudulently obtained.

If, indeed, a record were suppressed for the express purpose of enabling a party to obtain a decree beyond what he was entitled to, or if a "supply bill" or other paper, or a verbal statement of the contents of a record varied materially from the original, and the variation were made for the express purpose of misleading, and did mislead, that would be clear fraud. The bill before us contains no allegations to this effect, and it does not seem that the facts would have justified them. The learned draftsman of the bill was, therefore, compelled to rely upon the mere fact of the loss of the papers, and the failure to read them and others to sustain his bill. He alleges that Payne's answer to the cross-bill was not on file, and, of course, not read or offered to be read, but he does not allege that this answer contained any admission which would go to sustain his client's view of his rights, or which was in conflict with the decree actually rendered. And so of other papers which are alleged to have been mislaid, or not read. The same is true of the supposed erroneous recitals in the decree. They are not shown, nor do they appear to be material.

The bill, as an original bill in the nature of a bill of review, either contains no equity, or equity very defectively stated.

The bill alleges, however, that the final decree complained of is not warranted by the pleadings therein, and, if so, this would be sufficient to sustain it as a bill of review for error apparent. That is to say, if taking the facts to be true as recited in the pleadings and decree, the decree is contrary to

law, or not warranted by the allegations of the bill, a bill of review for error apparent will lie. Story Eq. Pl., § 405, *et seq.; Eaton* v. *Dickinson*, 3 Sneed, 397 ; *Goodhue* v. *Churchman*, 1 Barb. Ch. R. 596. And this because the complainant must abide by his own allegations on which the defendants may have relied in allowing him to take a decree, and because every decree should conform to the law.

The decree sought to be reviewed goes upon the ground that by the conduct of Beech in failing to defend the Stretch suit, the complainant Payne became entitled to recover from Beech the full amount of the purchase-money of the 70 3-4 acres with interest, and to subject to the satisfaction of this judgment the four lots conveyed by Payne to Beech in part consideration for said land, *under the lien reserved on the face of the deed of conveyance of these lots.* This deed was made an exhibit to Payne's original bill, and was allowed to show for itself, the bill only stating, according to the bill of review, that Payne " had a lien on said lots," without stating its extent. The answer and cross-bill of Randall states, according to the bill of review, that the lien thus retained was " until the encumbrance on the 70 3-4 acres was paid," namely, the unpaid purchase-money due to A. & J. Stretch as vendors. This is very loose and unsatisfactory, the learned counsel who drafted the bill of review doubtless having the deed before him, and seemingly taking it for granted that the court would also have it before him, and that therefore it was unnecessary to be more precise. It is fairly inferrable, however, from what is said that the lien reserved by Payne in his deed for the lots was only to protect him against the encumbrance on the 70 3-4 acres. The very nature of the transaction indicates that such was the character and limitation of the lien reserved. If so, it is clear that Payne was not entitled, under this lien, to subject the lots to the full extent of the decree recovered against Beech. Whatever might be his rights against Beech on the warranty of the latter of the title to the 70 3-4 acres, Payne could only subject the lots to so much of this decree as represented the

Stretch encumbrance. Whatever damages Payne may have sustained by the failure of Beech to protect him against the Stretch encumbrance was a personal demand against Beech, not a lien on the lots. Subsequent purchasers of these lots from Beech would have a right to limit the recovery against the lots to the lien reserved, and, as between them and Payne, it was as much Payne's duty to pay off that lien, as it was Beech's duty, as between him and Payne, to protect the latter from the same encumbrance.

Moreover, Randall's answer and cross-bill make out a clear case of equity against Payne to the extent of so much of the mortgage of the Building and Loan Association as was a lien on the 50 feet lot, and to the extent of the liability of Payne as an endorser on the Jennings' notes. Payne was individually liable for these debts, and Randall was entitled to be subrogated to the one by reason of the liability of his lot under the mortgage, and to the other as assignee of the notes. It was error, therefore, in the decree not to have disposed of these equities arising upon the pleadings. Although Randall's cross-bill may have been properly dismissed so far as Mrs. M. E. Payne was concerned, it was not dismissed at all as to E. D. Payne. Randall may have lost all redress so far as the 70 3-4 acres were concerned by reason of the fact that the equity of his cross-bill was fully met by the answer of Mrs. Payne and not sustained by proof, yet neither the pleadings nor the decree show that he had lost his equities as against E. D. Payne. The decree ought, therefore, to have disposed of these equities, and is erroneous in not having done so. The decree is not warranted, in this view, by the pleadings. Under the decisions of the supreme court of this state, the original and cross-bill are treated as forming but one suit, the latter becoming as it were incorporated with the former. *Cocke* v. *Trotter*, 10 Yer. 214; *Woodrum* v. *Kirkpatrick*, 2 Swan, 223. It would seem to follow that the decree in such cases should be warranted by the pleadings, not, of course, that the relief should conform to the relief claimed in the cross-bill, as well as the original

bill, but the decree should dispose of the questions raised between the parties by the pleadings. A failure to do this, where the equity is clear, would be error apparent. *Moore* v. *Huntington*, 17 Wall. 417.

The motion to dismiss for want of equity on the face of the bill must be disallowed.