# Keeling *versus* Griffin.

1. The Act of March 29th 1840 (Lateral Railroads) is a supplement to the Act of May 5th 1832, is in *pari materiâ* with it and should be so construed.
2. Neither act authorizes the connection of a lateral road, except with a public improvement, railroad or highway, as enumerated in those acts.

November 13th 1867.  Before THOMPSON, STRONG, READ and AGNEW, JJ.  WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county :* No. 90, to October and November Term 1867.

This was a proceeding on the petition of Joseph Keeling, to be allowed to construct a lateral railroad, commenced March 2d 1867.  The petition set out that the applicant was owner of certain coal lands, in the vicinity of a coal railroad, owned by the heirs of Oliver Ormsby, deceased, with whom he had made an agreement for connection therewith and for transporting the coal to East Birmingham ; that he had surveyed a route through lands of Margaret Griffin and others—describing it—and was desirous to construct a railroad upon the route in conformity with the Act

6 P. F. SMITH—20

of May 5th 1832 and its supplements; and prayed for the appointment of viewers, &c. The viewers reported in favor of the road.

To their report Margaret Griffin filed these exceptions:—

"1. The proposed lateral railroad does not connect with any public improvement, or *quasi* improvement.

"2. The said road does not connect with any such public highway or private way or road as is contemplated by the Acts of Assembly relating to lateral railroads; nor is it such a road as the law authorizes."

The court below, being of opinion that the legislature by the original act and its supplement "intended that lateral railroads should be for the use of the public as well as for the person applying for the same, and should connect with some highway or public improvement," quashed all the proceedings. This was assigned for error by the petitioner, who removed the case to the Supreme Court.

*H. Burgwin*, for plaintiff in error, cited Acts of May 5th 1832, § 1, Pamph. L. 501; March 29th 1840, § 2, Pamph. L. 196, Purd. 846, 848, pl. 49, 65.

*Woods*, for defendant in error.

The opinion of the Court was delivered, January 7th 1868, by THOMPSON, C. J.—It must be admitted that the Act of the 5th of May 1832, the first Act in this state giving authority to private or unincorporated persons to exercise the right of eminent domain, and take private property for the purpose of constructing lateral railways to connect with public highways, was very narrowly within constitutional sanction; and had it not been for provisions contained in it, that the public might use such roads when made, on conforming to certain regulations and paying tolls, together with the reserved right of the state to take such improvements at any time on reimbursing the cost of construction, the act never could have been sustained, as I think is shown in the opinion of Woodward, J., in Hays *v.* Risher, 8 Casey 169. The constitutionality of the act and its supplements, however, has been affirmed in numerous cases on these and other grounds, and is not now an open question.

But in our opinion, the construction contended for by the plaintiff in error, of the 2d section of the Act of 1840, is not tenable, without renewing the question of the constitutionality of the act claimed to be modified by that section. It is true the words of the act favor the construction claimed; but as it is a supplement to the Act of 1832 extending its provisions to subterranean railways, its provisions otherwise are in *pari materiâ* with the original act, and ought so to be construed. That act autho-

rizes the construction of a private railway, in order to connect with any railroad, canal or slackwater navigation constructed by the state or incorporated company. Having such a connection, the public would be interested in the lateral railway. At its terminus there would be a highway which would be ready to transport its freights, and it would thus have an outlet to market. In regard to an underground railway, this would be a material consideration to the owner of the land through which the road should pass. Inasmuch as the advantages of the private railway are to be considered and allowed for in assessing damages, to fulfil the constitutional requirement of compensation, only a connection between the lateral railway and a public improvement could give the owner of intervening lands taken, the benefit of the *advantages* he has paid for in the lessening of the allowance for compensation for the right of way. If the lateral railway be authorized to connect with a private road, no right to pass over it, except by contract, would necessarily accrue to him. He would be liable to be stopped by the owner, and so would the public at the point of intersection. He would have no right to pass over the private road, simply because the lateral railway connected with it, and thus the party constructing the lateral railway, would in effect obtain a road without obligation or power, perhaps, to accommodate the public or benefit him whose property he has taken. This would be to take private property for private use, which no power can do, or authorize, in this Commonwealth. Nor in such case would there ever be an inducement for the state to resume the work it has authorized the lateral railway builder to perform. We agree in opinion, therefore, with the court below, that there is no authority for the connection of lateral railways, excepting with public improvements, railroads or highways of some description, as enumerated in the Act of 1832 and its supplements; and that it was right to set aside the proceedings to consummate a connection between the proposed road in this instance and the private road indicated.

Order of the court quashing the proceedings affirmed, at the costs of the plaintiff in error.