In re Petition of William B. Rodgers, trading as Tide Coal Company, for Appointment of Viewers for a Lateral Railroad through Lands of Mrs. C. H. Snowden, Mrs. E. S. Hackney, Miss Mary Hogg, and others.

*Mines and mining—Definition of mine—Act of July 5, 1883—Lateral railroads.*

Where the size of a coal mining plant is in proportion to the area of coal to be mined and "a plan of the mining operations to be pursued in the mining of the coal" has been formulated and followed, the plant, the plan of operation and the area of coal with which they are connected may be designated as a coal mine within the meaning of the Act of July 5, 1883, P. L. 176.

*Constitutional law—Title of statute—Supplementary act—Act of July 5, 1883.*

When an act is declared to be a supplement to a former act, if the subject of the original act is sufficiently expressed in its own title and the provisions of the supplement are germane to that subject, the subject of the supplement is sufficiently covered by a title containing a specific reference to the original by its title with the date of its approval.

The act of July 5, 1883, entitled "A supplement to an act entitled 'an act regulating lateral railroads,' approved the fifth day of May Anno Domini one thousand eight hundred and thirty-two, authorizing the owners or lessees of iron ore, or coal mines, to construct lateral railroads from said mines to any railroad, public road or navigable stream within the county in which such mines are situated," is not defective in title.

Argued May 9, 1898. Appeal, No. 142, Jan. T., 1898, by William B. Rodgers, trading as Tide Coal Company, from order of C. P. Fayette Co., June T., 1898, No. 60, refusing to appoint viewers for lateral railroad. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for the appointment of viewers for lateral railroad.

The facts appear by the opinion of REPPERT, J., as follows:
This is an application by William B. Rodgers, doing business
as the Tide Coal Company, for appointment of viewers for a
lateral railroad under the act of 1832, and its supplements, in-
cluding the act of 1883. The petition was filed March 21, 1898,
and notice of the intended application was given to the parties
interested March 1 and 5, 1898. The petitioner is the owner
of the Pittsburg or Monongahela seam of coal underlying 264
acres of land in Jefferson township, Fayette county. This
tract of coal is distant a little over 4,000 feet from the Monon-
gahela river, which has been made navigable by slack water.
The tract was originally composed of two contiguous parcels,
owned respectively by Harvey J. Steele and Joseph S. Elliott,
the Steele parcel containing 114.92 acres, being purchased Feb-
ruary 1, 1898, and the Elliott parcel, including a reservation of
two acres, containing 151.42 acres, having been purchased a few
months prior to, or about the same time. The petitioner is also
the lessee of the Chamouni coal mine and coal land abutting
on the said Monongahela river. Between the Chamouni prop-
erty and the petitioner's 264 acre tract of coal, a wedge-shaped
portion of a tract of coal containing about 450 acres inter-
venes. This intervening coal is owned by Mrs. C. L. Snow-
den, Mrs. E. S. Hackney and Miss Mary Hogg, and is under
lease to Snowden, Gould & Company, for a period of ten years
from 1894. The property is known as the Albany mine, and
has been operated since about 1884, and a considerable portion
of the coal mined. In addition to the coal the property con-
sists of tipple, haulage, draining and ventilating system and
plant, electric plant, boilers, engines, blacksmith shop, boiler
houses, thirty or forty tenement houses, 225 cars, etc. A tract
of undeveloped coal belonging to the heirs of Adam Jacobs,
deceased, adjoins the Chamouni property, the Snowden property
and a part of the 264 acre tract, on the north. The route of
the proposed lateral railroad begins on the line of the Mononga-
hela river at the tipple house of the Chamouni mines, thence
westward and underground through the excavated portion of
the Chamouni property to the line of the coal of Mrs. C. L.
Snowden and others, through the same for a distance of 1,714

feet to the coal tract of the petitioner, containing 264 acres. The eastern terminus of the road is at the western line of that portion of petitioner's tract purchased of Steele. In 1895 the lessees of the Albany property, with a view to the systematic mining of the coal leased, laid out their coal and made a working plan whereby the unmined coal could be operated to the best advantage. In the development of the coal this plan has been followed since that time. The entrance to the Albany mine is near the southwest corner of the property. The main entry is planned to run from the entrance of the mine in a straight line to the northern boundary line, substantially parallel with the western boundary line and a short distance therefrom. The exhaust air course runs parallel with the main entry and distant about seventy feet west. The main entry and air course have been driven about 5,800 feet from the mouth of the mine, and at the time notice of this application was given to the owners and lessees, March 1 and 5, 1898, said entry and air course had been driven a considerable distance beyond the location of the proposed lateral railroad. No other excavations have been made in the coal on the route of the proposed railroad. In the petition for the appointment of viewers it is set forth that said railroad does not "pass through and disturb the operating or endanger the safety of any other mine—passing over and above any intervening slope, entry, heading, drift, room or opening in existence at the time of the marking out and surveying of said lateral railroad, or at the time of the filing hereof." The petitioner proposes to construct the railroad through the Monongahela seam of coal from the Chamouni pit mouth to its eastern terminus, except where the road crosses the main entry and air course of the Albany mine. He designs to avoid interference with these by an overcast in the overlying strata, leaving ten feet of overlying strata between the entry and air course and the road, and to reinforce the strength of the intervening strata by brick and stone arches in the entry and air course, and by steel beams and girders and concrete above, and in any other way that the engineers of the petitioner and parties interested and the mine inspector of the district, or a majority of them, might regard as necessary.

To the petition the owners and the lessees and others interested in said intervening coal, filed seven exceptions, and

March 29, 1898, was fixed for the hearing thereon. On the day of the hearing an answer of this petition was also filed. The matters of defense chiefly relied on by the respondents are embodied in their answer, and in the fifth and sixth exceptions filed to the petition, to wit: The proposed railroad would intersect and cross the main entry and haulage way of the mines of Snowden, Gould & Company, already opened beyond the proposed railroad; and that said railroad would not only "pass through, disturb the operating and endanger the safety" of said mines, but would practically destroy said mines in the vicinity of said railroad, would seriously endanger the safety of the mine, obstruct its ventilation, prevent its haulage system, and affect its drainage.

The rights of the petitioner are such as have been conferred upon him by legislative enactment. Is this proposed lateral railroad within the intent and meaning of the act of 1832 and its supplements? If it is, the viewers asked for should be appointed, otherwise the appointment of viewers should be refused and the petition dismissed: Hays v. Risher, 32 Pa. 169; Youghiogheny River Coal Co. v. Robertson et al., 12 Pa. C. C. R. 1. The act of 1832, and its supplements of 1840 and 1848, undoubtedly authorize the appointment of the viewers asked for, unless, under the act of 1883, the proposed railroad passes through, disturbs the operating or endangers the safety of another mine. The act of 1883 reads as follows: "It shall be lawful for the owners or lessees of iron ore or coal mines to construct lateral railroads from said mines to any railroad, public road, or navigable stream, over or under, or partly over and partly under, the surface of intervening lands: Provided, said lateral railroad shall not extend beyond the limits of the county in which said mines may be situated, nor pass through, disturb the operating, or endanger the safety of any other mine; and the proceedings to obtain said lateral roads shall be according to the provisions of the act of May 5, 1832, and the supplements thereto."

Is the tract of 264 acres of undeveloped coal to be reached by the proposed road a coal mine within the meaning of the act of 1832? If it is not, the act has no application to this cause, and the proposed road could be located and constructed notwithstanding the proviso of the act of 1883. The act of 1832 applies to the owners of "lands" and "coal mines." Coal in

place is land.   Conceding that the property in question is not a " coal mine," and that therefore under the acts of 1832, 1840 and 1848, the petitioner has the right to construct a lateral railroad thereto, under the surface, notwithstanding the proviso of the act of 1883.   After the construction of the road, should it be operated, the coal would necessarily be developed and the property, or a part of it at least, would be a " coal mine."   If the contention of the respondents is true, the immediate result would be a lateral railroad from a coal mine passing through another coal mine, the very thing the act was intended to prevent if it has any meaning and force.   The object of the act was the protection of the owners of intervening mines ; and while it was the purpose of lateral railroad legislation to bring coal and other minerals into market, it is just as apparent that the intention of the act of 1883, founded upon experience and justice, was that this should not be done in such a manner as would interfere with a prior enterprise to the same end.   Nor are we satisfied that it is necessary to regard undeveloped coal as " land " in order to bring it within the spirit and intent of the original act of 1832.   We therefore conclude that the act of 1883 is applicable to the present case, and that the tract of 264 acres of undeveloped coal belonging to the petitioner, to which he desires a lateral railroad, may be classed within the meaning of the term " coal mine," as used in the act of 1832, and its supplements.

Upon the argument it was urged by council for petitioner that the proviso of the act of 1883 is unconstitutional.   We will not so declare.   The act has stood unchallenged for fifteen years.   Its provisions are just and reasonable, and we will follow them until the appellate court directs otherwise.

The next inquiry is as to the meaning of the word " mine " as used in the proviso of the act of 1883.   " Said lateral railroad shall not—pass through, disturb the operation, or endanger the safety of any other mine ; " etc.   It is strenuously urged in behalf of the petitioner that the meaning of the word mine in this connection relates only to the actual workings or openings in the seam of coal, and many authorities and definitions of the term are cited in support of this contention.   The respondents on the other hand allege that a mine is " such territory, whether worked through one or more drifts, as lies compactly adjacent, and in its

working constitutes but a simple operation;" that it "includes the bed or vein of ore into which the pit enters, so far as may be necessary to the working of the mine, and the whole series of shafts and subterranean passages and chambers connected with it." A number of decisions were quoted arising out of claims of tenants for life to work mines supporting their contention. . The first definition above noted is taken from the case of Commonwealth v. Wigton, 12 Pa. C. C. R. 55, in which the meaning of the words, " every coal mine," in the 5th section of the act of 1885, in reference to bituminous coal mines, were construed by Judge Krebs. The controversy arose in that case, in part, out of the fact that five drifts had been driven into one solid body of coal, and the commonwealth contended that therefore there were five separate mines requiring the services of five mine bosses. On that branch of the case the court took the view above stated, and against the position of the commonwealth. While the question in that case was not whether a mine includes, not only the actual openings in the seam of coal, but also the adjacent body of solid coal, yet the definition given is important for the reason that the word " mine " seems to be used in the same sense in both acts. If the meaning of the word mine contended for by respondents is correct, under the evidence submitted, the Snowden coal mine embraces the entire body of their coal as necessary for the proper working of the mine. The size of the plant is in proportion to the area of coal to be mined and the working of the coal in accordance with the mine plan would constitute but a simple operation. The meaning of the word mine contended for by the petitioner would limit its application to the excavations made at the time of the location of the lateral railroad. If interference with these excavations could be avoided by over casts, or in any other way the road could be constructed without reference to its effect upon the mining of the coal remaining in place. Such a construction of the act of 1883 would deprive intervening mine owners to a great extent of the protection the act was designated to afford. Modern coal mining requires the application of scientific principles and direction by high intelligence. A modern coal mine is something more than an opening or series of openings in the earth. The openings must be driven with a view to the safe and economical removal of the entire body of

coal to be mined, and in that sense every foot of excavation is related to and connected with the coal yet in place. In the present case, in 1895, a plan of the mining operations to be pursued in the mining of this coal was made which has been followed. It had in view the removal of the entire body of coal in this tract, including its drainage, ventilation and haulage. It embraces a manway, used also as an air inlet, projected along the line of the Steele coal, and not yet completed beyond the location of the proposed railroad. The manway would have to cross the proposed railroad either at grade or by an overcast, or its projected route would have to be changed to cross under the proposed road near the main entry. It is also admitted that a block of coal from fifty to 150 feet in width would have to be left on each side of the railroad for its protection from the weight of the overlying strata and from the mining operations of the respondents. That an independent passageway, by avoiding the excavations already made, can be driven into and through the coal in place, without passing through, disturbing the operations or endangering the safety of this mine, as we understand the meaning of the word, is not possible under the evidence in the case. It is very true that practically only forty-three acres of the coal in question would be affected. But if the right be conceded there can be no limit to the area that might be affected in the same manner, and as there is no way of satisfactorily estimating the damages that might ensue from such an interference it is prohibited by law.

For the reasons above given we are compelled to refuse the prayer of the petitioner and dismiss the petition.

*Error assigned* was the order of the court.

*C. G. McIlvain* and *G. D. Howell*, with them *Boyd & Umbel*, for appellant.—There can be no question that coal and minerals in place are land, and thus within the very terms of the act of 1840: Brown v. Corey, 43 Pa. 503.

A proviso inconsistent with the title is inoperative. A title must not be inconsistent with the enactment: Sewickley Borough v. Sholes, 118 Pa. 165; Road in Otto Twp., 2 Pa. Superior Ct. 20; Road in Phœnixville, 109 Pa. 44; Perkins v. Philadelphia, 156 Pa. 554; Com. v. Samuels, 163 Pa. 283; Sanderson on Validity of Statutes in Pennsylvania, p. 13.

A mine properly speaking is the pit or excavation in the earth from which the ore is taken. The term is certainly used to include the bed or vien of ore into which the pit enters, so far as may be necessary to the working of the mine, and the whole series of shafts and subterranean passages and chambers connected with it. But neither in ordinary parlance nor in strict technical language is a mine understood to indicate the entire ore bed with which the shaft is connected: Shaw v. Wallace, 1 Dutch, 453; Haddock v. Com., 103 Pa. 243.

This location of a railroad by survey is a taking and appropriation of the land, although the actual construction is not begun for years afterwards: Ry. Co. v. Com., 101 Pa. 196; Johnston v. Callery, 184 Pa. 146; Ry. Co. v. R. R. Co., 159 Pa. 331; Williamsport, etc., R. R. Co. v. R. R. Co., 141 Pa. 414.

Bearing upon the legal right of the petitioner to pass over any mines, that is, by passing through the stratum overlying the coal seam, the act of 1883 is silent. And independent of the acts of 1832, 1840 and 1848, we would be entitled to pass through this overlying stratum under the following authorities: Chartiers B. C. Co. v. Mellon, 152 Pa. 294; Damon's App., 119 Pa. 287; Lyle v. R. R., 131 Pa. 437; In re New Brighton, etc., R. R. Co., 30 Pitts. Leg. Jour. 22.

We deem it unnecessary to discuss the exception that the act is unconstitutional, but refer the Court to the following decisions in which the constitutionality of the act has been affirmatively declared: Harvey v. Thomas, 10 Watts, 63; Harvey v. Lloyd, 3 Pa. 331; Brown v. Corey, 43 Pa. 495.

*N. Ewing*, with him *Lindsey & Johnson*, for appellees.—The title of the act is sufficient: Phila. v. Market Co., 161 Pa. 527; Com. v. Taylor, 159 Pa. 457.

The petitioner would limit a coal mine to the excavations alone, and he insists that unless his proposed road passes through an excavation in respondent's coal property it does not pass through their coal mine. This is certainly a very narrow, technical and unjustifiable contention. By that construction a lateral railroad could be constructed through a coal stratum immediately beyond the present limit of the workings, if only not just through them, and thus at once effectually prevent further operations. In this way one mine would be closed sim-

ply to permit a competitor to open another: Dwarris on Statutes, p. 188; Westmoreland Coal Co.'s App., 85 Pa. 344; Neel v. Neel, 7 ·Harris, 323; Haddock v. Com., 103 Pa. 249.

OPINION BY MR. JUSTICE McCOLLUM, May 31, 1899:

The appellant is the lessee and operator of a coal mine abutting on the Monongahela river, and he is also the owner of the Pittsburg or Monongahela seam of bituminous coal underlying 264 acres of land situate some distance from the coal mine above mentioned, and from the river on which said mine abuts. Between the 264 acres and the coal mine of which the appellant is lessee a portion of a tract of land, containing about 450 acres, intervenes. It is known as the Albany mine, and is owned by Mrs. C. H. Snowden, Mrs. E. S. Hackney and Miss Mary Hogg who have leased it to Snowden, Gould & Company for a term of years. The mine has been operated since 1884, and has all the requisites for a reasonably safe and successful operation of it, including, inter alia, " draining and ventilating system and plant, electric plant, boilers, engines, blacksmith shop, boiler houses, 30 or 40 tenement houses, 225 cars," etc. The lessees, having regard to the term of their lease, are prosecuting with due diligence the work of mining and removing the coal underlying said tract. The Albany mine includes all the coal underlying the intervening land, and is clearly a coal mine within the meaning of the Act of July 5, 1883, P. L. 176. This sufficiently appears in the testimony which fully sustains the finding of the learned court below on this branch of the case.

The appellant acquired title to the coal underlying the 264 acres by two deeds, one of which was dated January 31, 1898, and the other was dated February 1, 1898. Previous to the execution of the deeds the appellant had no interest in the coal, enforceable against his grantors or the owners or lessees of the coal land intervening. On February 14, 1898, he filed a petition in the court of common pleas of Fayette county, alleging, inter alia, that he labored under great inconvenience for want of " a private roadway or heading under the surface of the ground from a point at or near the eastern terminus of the main heading" of the coal mine leased to him, and thence to a point in the western boundary underlying the 264 acres, which "private roadway or heading," he claimed, would necessarily

pass under and through the intervening land and coal under-
lying it, for a distance of about 1,743 feet. The prayer of the
petition was for the appointment of "properly qualified persons
to view the place proposed for said road, and to lay out the same,
if they deemed it necessary, and to assess the damages sustained
therefrom" by the owners of the intervening land and the les-
sees of the coal thereunder. On February 28, 1898, exceptions
to this petition were filed by the owners and lessees of the inter-
vening land and coal. On March 21, 1898, the appellant filed
another petition in which he alleged that he had surveyed and
marked a route through the aforesaid intervening land and coal
for a lateral railroad of the width of twenty feet, which route,
he claimed, was particularly set forth and described in the plan
annexed thereto. The petition concluded with a prayer for
the appointment of "six disinterested and judicious men, resi-
dent in said county of Fayette, to view the said marked and
proposed route for a railroad, and examine the same, and to
make report in writing according to the provisions of the stat-
utes in such cases made and provided, whether the railroad
petitioned for is necessary for public or private purposes, as
well as the damages which shall be sustained by the owners of
the intervening land." The proceeding under the first petition
was discontinued on March 30, 1898, and the second petition
was disposed of by the learned court below upon due consider-
ation of the petition, the exceptions and answer thereto, and
the testimony submitted by the parties. The result of the hear-
ing had was a refusal to appoint viewers and a dismissal of the
petition.

The principal contention of the appellant, as shown by the
printed argument in his paper-book, is that the proviso to the
act of 1883 is unconstitutional, and that the property through
which he proposes to locate and construct a lateral railroad of
the width of twenty feet is not a coal mine. It must be con-
ceded, however, that a railroad located as shown on the plan
annexed to the petition would pass through the intervening land
and coal a distance of at least 1,714 feet, and intersect and cross
the main entry and haulage way of the mine of Snowden, Gould
& Company, whose lease includes all the coal underlying the 450
acres, and whose plan for mining and removing the coal was
definitely formed in 1895, and has been consistently maintained

and adhered to since that time. The suggestion that the lessees in the formation and prosecution of their mining plan had in view the prevention of the appellant's purpose to locate and construct a lateral railroad through the intervening land and coal in which they were interested does not appear to be supported by the testimony in the case. As the appellant did not acquire title to any portion of the coal under the 264 acres until January 31, 1898, and the main entry and haulage way was extended beyond the route of the proposed railroad before the lessees had notice of his intention to petition for a view, there is but little room or basis for the suggestion. Where the size of the plant is in proportion to the area of coal to be mined, and "a plan of the mining operations to be pursued in the mining of the coal" has been formulated and followed, the plant, the plan of operation and the area of coal with which they are connected may be designated as a coal mine. The learned judge of the court below, in his opinion dismissing the appellant's petition, has forcibly stated the reasons for his conclusion that the property to which this contention relates constitutes a coal mine within the meaning of the act aforesaid. We approve his conclusion and the reasoning which supports it.

We cannot assent to the appellant's contention that the act of 1883 is invalidated, in whole or in part, by a defective title. It is now well settled that "when an act is declared to be a supplement to a former act, if the subject of the original act is sufficiently expressed in its own title, and the provisions of the supplement are germane to that subject, the subject of the supplement is sufficiently covered by a title containing a specific reference to the original by its title with the date of its approval." The act of 1883 is in our opinion clearly within this rule and applicable to the case at bar. The specifications of error are dismissed and the decree of the court below is affirmed.