# In re: Application of Gladys Coal Mining Company.

*Railroads—Lateral railroads—Physical connection—Gauge—Act of May 5, 1832, P. L. 501—Act of May 21, 1921, P. L. 1050.*

Under the provisions of the Act of May 5, 1832, P. L. 501, as amended by the Act of May 21, 1921, P. L. 1050, providing for the construction of lateral railroads, it is not essential that there should

be an actual physical connection enabling cars to be run directly from a lateral railroad to the main railroad.

When the lateral railroad, is of a gauge different from that of the main railroad, reasonable facilities must be provided for handling of traffic which may be offered to it and the transfer to the main railroad. Otherwise it would lose the privileges conferred by the lateral railroad acts.

Argued April 14, 1927.   Appeal No. 32, April T., 1927, by Gladys Coal Mining Company from judgment of C. P. Armstrong County, December T., 1925, No. 376, In re: Application of Gladys Coal Mining Company, for lateral railroad.   Before PORTER, P. J., HENDERSON, TREXLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Reversed.

Petition for lateral railroad. Before GRAFF, P. J.

The facts are stated in the opinion of the Superior Court.

The Court dismissed the petition.   Petitioner appealed.

*Error assigned,* among others, was the decree of the Court.

*H. A. Heilman,* and with him *John M. Walker* and *H. B. Wassell,* for appellant.—The petitioner had the exclusive right to determine the route of the proposed railroad and a physical connection of the same gauge was not necessary:  York Valley Lime Co. Petition, 18 York Co. 129; Graff's Case, 23 Pa. Co. Ct. 349; Suppes Lateral Railroad, 30 Pa. Co. Ct. 355; Hays v. Risher, 32 Pa. 169; H. C. Frick Coal Co. v. Painter, 198 Pa. 468; Harvey v. Lloyd, 3 Pa. 331; Hays v. Briggs, 74 Pa. 373.

*Alexander J. Barron,* of *Alter, Wright & Barron,* and with him *Floyd C. Jones,* for appellee.—The Court had the power to dismiss the petition in limine:

Keeling v. Griffin, 56 Pa. 305; Rodgers' Petition, 192 Pa. 97. The railroad proposed was not such as is contemplated under the Act of Assembly: Keeling v. Griffin, 56 Pa. 305; Waddell's Appeal, 84 Pa. 90.

OPINION BY LINN, J., July 8, 1927:

This appeal is from an order dismissing appellant's petition for viewers for a lateral railroad under the act of May 5, 1832, P. L. 501, and supplements. One of them—the act of May 21, 1921, P. L. 1050, provides: "...... if any ...... corporation ...... being the owner ...... of coal mines ........ in the vicinity of any railroad ...... and not more than six miles distant therefrom, shall desire to make a railroad thereto over any intervening lands, ...... it ........ or [its] engineers, agents, and artists, may enter upon any lands, and survey and mark such route as ........ it, or they shall think proper to adopt, doing no damage to the property explored; and thereupon may present a petition to the Court of Common Pleas of the county in which said intervening land is situated, setting forth ...... its, or their desire to be allowed to construct and finish a railroad in and upon the said route, and the beginning, courses and distances thereof, and places of intersection of the main railroad, canal, or slackwater navigation, which shall be filed and entered of record in the said court, whereupon the said court shall appoint six disinterested and judicious men resident in said county, who shall view the said marked and proposed route for a railroad, and examine the same; and if they, or any four of them, shall deem the same necessary and useful for public or private purposes, they shall report in writing to the subsequent term of said court what damages will be sustained by the owner or owners of the said intervening land by the opening, constructing, completing, and using the said railroad ......"

Petitioner owns a coal mine in operation on the Leechburg branch of the Pennsylvania Railroad in Armstrong County; it also owns a deposit of coal which it desires to market, separated from its presently mined tract by coal land owned by the Park Coal Company. The petition averred that appellant's proposed lateral railroad is necessary and useful for public and private purposes to enable it to market its coal underlying the land so separated by the Park Coal Company's tract from appellant's other mine. The Park Coal Company, owner of the intervening land, filed an answer and nine exceptions to the petition. Evidence was taken in support of and against the exceptions and two of them were sustained on the ground, as we understand the opinion of the learned court below, that the lateral railroad would have no physical connection with the Pennsylvania Railroad and would not be available to the Park Coal Company for transportation of its coal. The opinion would indicate that this conclusion was reached on the authority of Keeling v. Griffin, 56 Pa. 305, and of Waddell's Appeal, 84 Pa. 90. Those decisions do not support the order. In the first of the cases referred to, it was desired to connect the lateral railroad with a private railroad, which of course was not within the statute; in the second case the statute relied on was held unconstitutional as authorizing condemnation for a wholly private railway.

Instead of a connection with a private railroad, appellant's petition shows an intention to connect with the Pennsylvania Railroad and exhibits a surveyed route so designed. Though this survey was before the court below, the opinion nevertheless states: "It will be observed that the proposed lateral railroad must intersect a main railroad or public improvement. This means that there shall be a connection between the lateral railroad and the public

improvement capable of being used by the intervening land owners. The question of the possibility of such construction is not now before us. It is clearly apparent that no connection, excepting as it now exists, is contemplated. The petitioner does not propose to use this system to load its coal upon the standard gauge railroad, but rather, intends using its tipple which is not a part of the proposed lateral railroad. According to the petition, the narrow gauge lateral railroad connects with the standard gauge main route, but the evidence shows a failure of any actual physical connection." We do not so understand it.

The petition avers the ownership of appellant's two tracts of coal land, separated by the land of exceptant. It averred that a lateral railway had been surveyed and marked on the ground, and contained a map showing the survey by metes and bounds and grades; that surveyed line began at a point on the Pennsylvania Railroad and terminated in the far tract of appellant's coal land, showing that at two points, underground, it passed over land of exceptant. The first of these passages over exceptant's lands, it appears, has been in use some six or seven years pursuant to a parol grant of a right of way. The proposed route from the Pennsylvania Railroad extends partly over and partly alongside an existing side track of standard. gauge, leading from the Pennsylvania Railroad on land over which appellant has the right by grant to build and maintain a railroad track. That existing side track extends to a point under appellant's tipple through which part of its coal now mined is shipped. The proposed route diverges from this siding and 62 feet therefrom coincides with a constructed 36 inch narrow gauge track which enters the portal of appellant's mine and extends through it and terminates in the coal vein in exceptant's intervening land about 50 feet beyond the boundary of appellant's land.

Appellant's general manager testified that it was proposed to construct the lateral railroad "in its entirety"; that part of it was already constructed, meaning thereby the presently used road, beginning at the point 62 feet from the siding referred to, and extending through its mine terminating in the coal vein of exceptant. He was asked about proposed changes in the present construction and said "If this proposed lateral railroad was offered material for transporting we would have to do it. We would have to construct some plan for handling it." As to some changes about which he was asked, he replied that he did not know, that the matter asked about would have to be taken up with appellant's engineer.

The testimony does not support the conclusion that "it is clearly apparent that no connection, excepting as it now exists, is contemplated." The statute does not contemplate a connection enabling the mine cars to be run from the lateral railroad directly to and on the rails of the main railroad. In the first case that arose under the act, Harvey v. Thomas, 10 Watts 63, the lateral railroad extended to slack-water; and "the railroad was carried into the stream on a platform; whence the coals were discharged by a schute into boats lying parallel with the shore." It does not appear that it is not feasible for appellant to construct facilities for the transfer of the contents of the narrow gauge cars moving on its road into the equipment to move traffic on the Pennsylvania Railroad; on the contrary, it is physically possible and appellant's petition must be taken to be a proposal to do what is necessary in that respect, for when traffic is offered, appellant must provide reasonable facilities for handling it; that is its contract with the state; unless it performs, it loses the privilege obtained under the lateral railroad acts. The court is not now concerned with the route selected, the responsibility for that choice is

with appellant. It is true that it was said in Hays v. Risher, 32 Pa. 169, that the "better practice undoubtedly is to arrest the proceedings in limine, if, on the face of the application, fatal objections are revealed. The language of the act is mandatory, that the court shall appoint a view, but this means that they shall appoint a view only when the petitioner brings his case within the act." But no "fatal objections" have been specified on the face of the petition in this case. In Rodgers' Petition, 192 Pa. 97, relied on by appellee, the court found from the evidence on exceptions to the petition that the proposed lateral railroad if constructed would interfere with the mining operations then existing in the land through which it was proposed to construct the lateral railway, and as that was in violation of the Act of July 5, 1883, P. L. 176, the petition was dismissed. While there was an exception of that character filed to this petition, the court below did not sustain it.

Of the two exceptions sustained, the 8th is that the lateral railroad described in the petition is not such a railroad within the lateral railroad acts; the 9th substantially repeats that statement with the addition that the petition fails "to disclose that it is possible to construct thereon a lateral railroad within the meaning of the acts of assembly, which road will have a physical connection with the main railroad, or which will be available for public or private use by the owners of intervening lands." The record discloses no apparent physical obstacle to the construction of the lateral railroad on the route surveyed and no reason why appellant cannot construct the necessary transshipment facilities required to enable traffic brought out on the lateral railroad for shipment over the Pennsylvania Railroad to be transferred into the equipment moving on that railroad.

We all agree, therefore, that the order dismissing

the petition must be reversed, the petition reinstated and the record remitted for further proceedings. This order is made without prejudice to the right of the Park Coal Company to renew in those proceedings any objections heretofore made; costs of this appeal to be paid by appellant.